**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Don A. Beskrone as Chapter 7 Trustee, for Rosetta Genomics, Inc., ) ) ) | |
| Plaintiff, ) | Case No. |
| v. ) | |
| Kenneth A. Berlin, Ron Kalfus, Brian Markison, Roy N. Davis, Joshua Rosensweig, Ph.D., Gerald Dogon and Tali Yaron-Eldar, ) ) ) ) ) | |
| Defendants. ) ) | |

**COMPLAINT FOR DAMAGES**

Don A. Beskrone, Chapter 7 Trustee ("Trustee") for the above-captioned debtor, by and through his undersigned counsel, files this complaint (the "Complaint") for damages for breach of fiduciary duty, gross negligence and fraud against Kenneth A. Berlin, Ron Kalfus, Brian Markison, Roy N. Davis, Joshua Rosensweig, Ph.D., Gerald Dogon and Tali Yaron-Eldar (collectively the "Defendants"). In support of this Complaint, Trustee alleges upon information and belief that:

**NATURE OF THE CASE**

1.     This case arises out of Defendants' breach of fiduciary duty, gross negligence and fraud in connection with investments made by two investment funds and a failed merger. Defendants approved and caused Rosetta Genomics, Ltd. to enter into the agreements with the investment funds or merger counterparty despite knowledge (or reason to know) of material facts about its flagship product that they misrepresented and/or omitted and failed to disclose to the investment funds or the merger counterparty.  As a result of Defendants' wrongdoing, the investment funds and Rosetta Genomics, Inc. (and its creditors) have been damaged.  Trustee hereby brings claims on behalf of the estate of Rosetta Genomics, Inc. against Defendants Berlin

1

and Kalfus for their breach of fiduciary duty, gross negligence, and fraud in connection with the merger transaction and claims as the assignee of the investment funds' claims against all defendants for their fraud in connection with the transactions with the investment funds.

2.      In 2016, 2017 and 2018 Rosetta Genomics, Ltd., the parent company of Rosetta Genomics, Inc., through and with the approval of Defendants induced Sabby Healthcare Master Fund, Ltd. and Sabby Volatility Warrant Master Fund, Ltd. to invest millions of dollars in Rosetta Genomics, Ltd., through a series of securities purchase agreements and the purchase of stock.  Also in 2017 and 2018, Rosetta Genomics, Ltd., through and with the approval of Defendants induced Genoptix, Inc. to enter into Agreements and Plans of Merger.  In connection therewith, Rosetta Genomics, Inc.'s officers and directors caused it to sell its subsidiaries to and commit to a bridge loan from Genoptix, Inc.

3.      These transactions were undertaken even though in June 2017 Rosetta Genomics, Ltd.'s Medicare reimbursements for its "best path to profitability" Reveal test had come under scrutiny, it had launched an internal investigation of its Medicare billing practices, its revenue had started to decline (and continued to do so) and in October 2017 it had overstated its Third Quarter 2017 revenue in an SEC filing.  These were all facts that were known or could have been known by Defendants.  However, Defendants never informed Sabby Healthcare Master Fund, Ltd., Sabby Volatility Warrant Master Fund, Ltd. or Genoptix, Inc. of these material facts at the time the various transactions were entered into or anytime thereafter.  Moreover, Defendants approved and/or caused Rosetta Genomics, Ltd. to enter into Agreements that contained representations and warranties that were false as well as conditions that could not be met, because of these undisclosed material facts.

4.      Once these facts came to light, the merger with Genoptix, Inc. failed, causing Rosetta Genomics, Ltd. and Rosetta Genomics, Inc. to file for Chapter 7 Bankruptcy liquidation, thereby damaging Rosetta Genomics, Inc., its creditors, Sabby Healthcare Master Fund, Ltd. and Sabby Volatility Warrant Master Fund, Ltd.

5.      Therefore, Trustee seeks to recover damages from Defendants Berlin and Kalfus for their breaches of the fiduciary duty they owed to Debtor Rosetta Genomics, Inc. (the "Debtor"), gross negligence and fraud in connection with a merger transaction with Genoptix, Inc. and damages from all Defendants for their fraud in connection with transactions involving Sabby Healthcare Master Fund, Ltd. and Sabby Volatility Warrant Master Fund, Ltd.

## JURISDICTION AND VENUE

6.      The United States District Court for the Southern District of New York (the "Court") has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332.

7.      Pursuant to 28 U.S.C. § 1332, the matter in controversy exceeds $75,000, exclusive of interest and costs.

8.      Pursuant to 28 U.S.C. § 1332(a) (1) and (2), the matter in controversy is between citizens of difference states and/or countries.

9.      Venue is proper in the Southern District of New York as the Merger Agreements and Stock Purchase Agreements at issue herein each contain forum selection clause that designate this Court for the resolution of claims.

## THE PARTIES

10.     The Trustee is the Chapter 7 Trustee for the Debtor and the Debtor's estate.  The Debtor is a Delaware corporation and has its principal place of business in the State of Pennsylvania.  The Trustee is a citizen of the State of Delaware.

11.     Defendant Kenneth A. Berlin served as the Chief Executive Officer and President of Rosetta Genomics, Ltd. ("Rosetta, Ltd.") from November 2, 2009 until April 18, 2018. Defendant Berlin also served as the Sole Director of Debtor.  Defendant Berlin is a citizen of the state of New Jersey.

12.     Defendant Ron Kalfus served as the Chief Financial Officer of Rosetta, Ltd. and Debtor at all times relevant to this proceeding.  Defendant Kalfus is a citizen of the state of New Jersey.

13.     Defendant Brian Markison served as Chairman of the Board of Directors of Rosetta, Ltd. at all times relevant to this proceeding.  Defendant Markison is a citizen of the State of New Jersey.

14.     Defendant Roy N. Davis served on the Board of Directors of Rosetta, Ltd. at all times relevant to this proceeding.  Defendant Davis is a citizen of Israel.

15.     Defendant Joshua Rosensweig served on the Board of Directors of Rosetta, Ltd. at all times relevant to this proceeding.  Defendant Rosensweig is a citizen of Israel.

16.     Defendant Gerald Dogon served on the Board of Directors of Rosetta, Ltd. at all times relevant to this proceeding.  Defendant Dogon is a citizen of Israel.

17.     Defendant Tali Yaron-Eldar served on the Board of Directors of Rosetta, Ltd. at all times relevant to this proceeding.  Defendant Yaron-Eldar is a resident of Israel.

18.     Non-parties Sabby Healthcare Master Fund, Ltd. and Sabby Volatility Warrant Master Fund, Ltd. are investment vehicles that were organized in the Cayman Islands (collectively "Sabby").

# BACKGROUND

19.     On May 31, 2018 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") for relief under chapter 7 of title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

20.     On the Petition Date, the Debtor filed its Schedules of Assets and Liabilities and Statement of Financial Affairs (the "Schedules and Statements") [Docket Nos. 5 and 6].

21.     Thereafter, Don A. Beskrone was appointed to serve as the interim chapter 7 trustee in this case. On July 18, 2018, a meeting of creditors (the "341 Meeting") was held pursuant to 11 U.S.C. § 341(a) [Docket No. 30], and the Trustee now serves as the permanent trustee of this case pursuant to 11 U.S.C. § 702(d).

22.     As set forth in the testimony of the Debtor's CFO, Ron Kalfus, at the 341 Meeting, the Debtor failed to operate profitably in the years prior to the Petition Date. To address its financial condition, the Debtor pursued a number of options, including sale or merger with other companies. However, these efforts failed to come to fruition. When a proposed merger between the Defendant and another company, Genoptix, Inc., failed to be consummated, the Debtor was forced to file for Chapter 7 Bankruptcy liquidation.

23.     The Debtor's insolvency in the years prior to the Petition Date was such that its Schedules shows assets of $696,396.42. The Debtor's claims register shows $53,667,345.75 of claims filed against Debtor.

24.     On July 9, 2018, the Trustee filed the Notice of Conversion from No Asset to Asset Case and Request to the Clerk to Fix a Bar Date to File Claims against the Debtor's Estate [Docket No. 20].

25.     Pursuant to the Order Approving Motion of Don A. Beskrone, Chapter 7 Trustee, for an Order, Pursuant to 11 U.S.C. §§ 105, 327, 328 and 363 (I) Authorizing the Retention of Heritage Global Partners, Inc. as Auctioneer Nunc Pro Tunc to June 28, 2018 And (II) Approving the Sale of Assets [Docket No. 47] (the "HGP Retention and Sale Order"), on or about August 9, 2018, an auction of the Debtor's assets was conducted. As set forth in the Trustee's Notice of Filing Auction/Sale Report [D.I. 56, filed 10/1/18], the auction of the Debtor's assets raised net proceeds of $150,010.50, further emphasizing the extent and degree of the Debtor's insolvency.

26.     As set forth in the Petition and the Schedules and Statements, the Debtor is a Delaware corporation whose principal place of business was located in Philadelphia, Pennsylvania. Prior to the Petition Date, the Trustee understands that, among other things, the Debtor developed diagnostic tests designed to differentiate between various types of cancer.

27.     As a result of its Chapter 7 Bankruptcy filing, the Debtor has ceased operations and no longer has employees.

28.     On or about May 14, 2021, Sabby assigned any and all claims against Rosetta, Ltd.'s and Debtor's officers, directors, employees and third parties to the Trustee.  On May 27, 2021, the Bankruptcy Court overseeing Debtor's Chapter 7 Bankruptcy authorized the Trustee to enter into the agreement to take assignment of and prosecute direct claims of Sabby.

**FACTS SUPPORTING CLAIMS**

29.     According to its Form 20-F filed with the U.S. Securities and Exchange Commission (the "SEC") on March 23, 2016, Rosetta, Ltd. "seek[s] to develop and commercialize new diagnostic tests based on various genomics markers, including DNA, microRNA and protein biomarkers and using various technologies, including, qPCR, microarrays, Next Generation Sequencing (NGS) and Fluorescence In Situ Hybridization (FISH)."  One such diagnostic test

based on its proprietary microRNA technologies was RosettaGX Reveal ("Reveal"). Also, according to the Form 20-F, Debtor's, along with two of its subsidiaries', "principal business activities … [were] to commercialize [Rosetta, Ltd.'s] products, perform tests in its CLIA-approved laboratories and expand the business of [Rosetta, Ltd.] in the United States."

30.     On or about November 23, 2016, Rosetta, Ltd. entered into a Securities Purchase Agreement with Sabby, by which Sabby agreed to purchase (i) an aggregate of 1,095,000 of the Rosetta, Ltd.'s ordinary shares at a purchase price of $0.50 per share and an aggregate principal amount of $3,160,000 unsecured convertible debentures in a registered direct offering and (ii) warrants to purchase up to 10,000,000 ordinary shares with an initial exercise price of $0.85 per share and an aggregate principal amount of $1,292,500 unsecured convertible debentures in a concurrent private placement.  In connection therewith, Sabby tendered $3,160,000 to Rosetta, Ltd. in exchange for 1,095,000 ordinary shares and the warrants.

31.     In June 2017, Rosetta, Ltd. learned that its third-party billing agent had possibly been incorrectly billing Medicare by filing Rosetta Ltd.'s Reveal test claims as Cancer Origin claims.  At that time, Rosetta, Ltd. commenced an internal investigation into the billing issues. Rosetta, Ltd. experienced a decline in Medicare reimbursements for Reveal tests and its revenue beginning in June 2017.

32.     Despite these facts, on August 3, 2017, Rosetta, Ltd. entered into a securities purchase agreement with Sabby, by which Sabby agreed to purchase (i) 138,000 Class A Units, each Class A Unit consisting of one Ordinary Share of Rosetta, Ltd., par value NIS 7.2 per share, and one warrant to purchase 0.50 Ordinary Share, and (ii) up to 1,811,974 Class B Units, each Class B Unit consisting of a Series A Warrant and one pre-funded warrant to purchase one Ordinary Share. Each Class A Unit was sold at a public offering price of $1.40 and each Class B

7

Unit was sold at a public offering price of $1.39. In connection therewith Sabby tendered $2,711,844 for the Units. Neither at that the time this securities purchase agreement was entered into nor any time thereafter did Defendants disclose to Sabby any adverse issues concerning the Reveal tests, the internal investigation or a decline in Medicare reimbursements and revenue.

33.    On September 28, 2017, Rosetta, Ltd. entered into another securities purchase agreement with Sabby, by which Sabby agreed to purchase (i) an aggregate principal amount of $2,000,000 of unregistered convertible debentures and (ii) warrants to purchase up to 2,173,914 ordinary shares with an initial exercise price of $1.15 per share. In connection therewith, Sabby tendered $2,000,000 for the debentures and warrants. At no time prior to or after entering into this securities purchase agreement did Defendants disclose to Sabby any adverse issues concerning the Reveal tests, the internal investigation or a decline in Medicare reimbursements and revenue.

34.    In connection with these securities transactions, Sabby tendered a total of $7,871,844 to Rosetta, Ltd in exchange for the foregoing investments, all without ever being advised of the material adverse issues concerning the Reveal test and Rosetta, Ltd.'s revenue.

35.    On October 10, 2017, Rosetta, Ltd. filed its Form 6-K with the SEC. Therein Defendant Berlin stated "We are particularly pleased to report preliminary Reveal revenue for the third quarter of 2017 of approximately $860,000, representing growth of approximately 23% compared with the second quarter of 2017. With another strong quarter of revenue growth for Reveal, we remain confident that our differentiated assay has significant near- and long-term revenue prospects with relatively high gross margins, which is why we believe Reveal provides the best path to profitability." This is compared to Rosetta, Ltd.'s total gross revenue for the first six month of 2017 of $2.7MM.

36.     On December 14, 2017 Rosetta, Ltd. entered into an Agreement and Plan of Merger with Genoptix, Inc. ("Genoptix").  The Agreement and Plan of Merger set forth the terms and conditions of a proposed acquisition of Rosetta, Ltd., including its wholly-owned subsidiary, Debtor.  The Defendants never disclosed to Genoptix, at that the time Agreement and Plan of Merger was entered into or at any time thereafter, any adverse issues concerning the Reveal tests, the internal investigation, the decline in Medicare reimbursements, the decline in revenue or the material misleading Form 6-K filed with the SEC.

37.     Shortly after entering into the Agreement and Plan of Merger, Genoptix began its due diligence with respect to Rosetta, Ltd. and the merger.  During the course of its due diligence, Genoptix requested certain information of Rosetta, Ltd., which was provided to it by Rosetta, Ltd., and was given access to certain systems and information of Rosetta, Ltd.  However, during the due diligence process, the Defendants never disclosed to Genoptix the material adverse issues concerning the Reveal test, Rosetta, Ltd.'s revenue or the misleading Form 6-K.

38.     On January 22, 2018, Medicare rejected Rosetta, Ltd.'s claim relating to a Reveal test that was performed on December 21, 2017, which was coded as a "Cancer Origin test." Rosetta, Ltd. sent Medicare requests for redetermination of its decision on February 2, 2018 and again on February 6, 2018.  On February 7, 2018, Medicare denied Rosetta, Ltd.'s appeal.

39.     On February 22, 2018 Rosetta, Ltd. held an Extraordinary General Meeting of Shareholders for the purpose of obtaining shareholder approval of the proposed merger with Genoptix.  However, the proposed merger did not obtain sufficient positive votes required for approval.

40.     On February 22, 2018 Genoptix terminated the Agreement and Plan of Merger but replaced it with a new Agreement and Plan of Merger (the "New Agreement and Plan of Merger"),

which was entered into on February 27, 2018.  The material terms of the Agreement and Plan of Merger and the New Agreement and Plan of Merger, pertinent to this claim, are believed to have been the same, although the purchase price and closing date was changed.  The New Agreement and Plan of Merger was executed on behalf of Rosetta, Ltd. by Defendant, Kenneth A. Berlin. Although Medicare had denied Rosetta, Ltd.'s appeal regarding the rejection of its Reveal test claim only 20 days earlier, Defendants never disclosed that fact to Genoptix when the New Agreement and Plan of Merger was entered into or thereafter.  Defendants also never disclosed to Genoptix, at that the time New Agreement and Plan of Merger was entered into or at any time thereafter, any adverse issues concerning the Reveal tests, the internal investigation, the decline in Medicare reimbursements, the decline in revenue or the material misleading Form 6-K filed with the SEC and therefore the representation and warranties contained in the Agreements were false and the conditions contained in the Agreements could not be met, as is discussed below.

41.  Defendants Brian Markison, Roy N. Davis, Joshua Rosensweig, Ph.D., Gerald Dogon and Tali Yaron-Eldar each approved the merger transaction with Genoptix and the Agreement and Plan of Merger and the New Agreement and Plan of Merger (collectively the "Agreements").  In this regard, the Agreements confirm that:

> WHEREAS, the board of directors of the Company [Rosetta, Ltd.] (the "Company Board") has unanimously (i) determined that this Agreement, the Merger and the other transactions contemplated by this Agreement are fair to, and in the best interests of, the Company and its shareholders and that, considering the financial position of the merging companies, no reasonable concern exists that the Surviving Company, will be unable to fulfill the obligations of the Company to its creditors; (ii) approve this Agreement, the Merger and the other transactions contemplated hereby; and (iii) determined to recommend that the shareholders of the Company approve this Agreement, the Merger and the other transactions contemplated hereby;

42.    Defendant Berlin approved the merger and the Agreements and executed the Agreements.

43.    As a "condition to and inducement of [Genoptix'] willingness to enter into [the New Agreement and Plan of Merger]" Genoptix and Debtor entered into a Stock Purchase Agreement, which was executed for Debtor by Defendant Berlin.  Pursuant to the Stock Purchase Agreement, Debtor agreed to sell its subsidiary Minuet Diagnostics, Inc. (and therefore Minuet Diagnostics' subsidiary, CynoGen, Inc.) to Genoptix.  Such an agreement was not contingent on the closing of the merger, was not customary in merger transactions and harmed Debtor and its creditors.

44.    Also as a "condition to and inducement of [Genoptix'] willingness to enter into [Agreement and Plan of Merger]" Genoptix and Debtor entered into (and on February 27, 2018 amended) a Loan and Security Agreement, which was executed for Debtor by Defendant Berlin. Pursuant to the Loan and Security Agreement, as amended, Genoptix agreed to extend Debtor a bridge loan of up to $600,000 monthly, bearing simple interest of 10% per annum, potentially further indebting Debtor.  The bridge loan was secured by, among other things, the capital stock of Debtor and its subsidiaries. Such an agreement was not contingent on the closing of the merger, was not customary in merger transactions and harmed Debtor and its creditors.

45.    Following its failure to gain approval of the proposed merger, Rosetta, Ltd. through Defendant Berlin, solicited Sabby to purchase additional shares of Rosetta, Ltd. in the open market. The purpose of this solicitation was to ensure sufficient votes in favor of the merger so as to secure shareholder approval of the merger.  Based on Defendant Berlin's misrepresentations and material omissions (as discussed below), Sabby agreed to purchase additional shares of Rosetta, Ltd. at a total purchase price of $367,735 (the "Sabby 2018 Purchases").  According to the Schedule 13G

that Rosetta, Ltd. filed with the SEC on or about March 12, 2018, after these additional purchases, Sabby held 351,372 shares of Rosetta, Ltd. stock.  With the additional investments that Defendant Berlin had solicited, Sabby's total investment in Rosetta, Ltd. had increased to $8,239,579. Although Medicare had denied Rosetta, Ltd.'s appeal regarding the rejection of its Reveal test claim only weeks earlier, Defendant Berlin never disclosed that fact to Sabby in connection with his solicitation of Sabby to purchase additional shares of Rosetta, Ltd. or at any time thereafter. Defendant Berlin also never disclosed to Sabby, in connection with soliciting Sabby to purchase additional shares of Rosetta, Ltd. or thereafter, any adverse issues concerning the Reveal tests, the internal investigation, the decline in Medicare reimbursements, the decline in revenue and the material misleading Form 6-K filed with the SEC.  Defendant Berlin also failed to disclose to Sabby at that time or at any time thereafter that the representations, warranties and conditions contained in the Agreements, which he had approved and caused to executed, were false and could not be met, as is discussed below.

46.     Pursuant to the terms of the New Agreement and Plan of Merger, upon the closing of the merger, Rosetta, Ltd., along with Debtor, would become a private wholly owned direct subsidiary of Genoptix.

47.     The New Agreement and Plan of Merger was subsequently amended by agreement dated March 11, 2018 and April 17, 2018.  The March 11, 2018 amendment was executed by Defendant Berlin while the April 17, 2018 amendment was executed by Ron Kalfus, Chief Financial Officer of Rosetta, Ltd.  These amendments did not materially change the provisions of the New Agreement and Plan of Merger addressed below.  The amendments each included a provision that "[e]xcept as expressly set forth in this Amendment…, the Agreement remains unchanged and, as modified hereby, the Agreement shall remain in full force and effect."  The

Defendants never disclosed to Genoptix, at that the time the amendments were entered into or at any time thereafter, any adverse issues concerning the Reveal tests, the internal investigation, the decline in Medicare reimbursements, the decline in revenue or the material misleading Form 6-K filed with the SEC and therefore the representation and warranties contained in the Agreements and incorporated into the amendments, were false and the conditions contained in the Agreements and incorporated in the amendments, could not be met, as is discussed below.

48.     On April 26, 2018, Rosetta, Ltd. held an Extraordinary General Meeting of Shareholders for the purpose of obtaining approval of the proposed merger with Genoptix.  With Sabby's additional purchase of shares, the proposed merger obtained sufficient positive votes and was approved.

49.     Rosetta, Ltd., acting through Defendants, never informed Genoptix or Sabby of the material facts alleged herein.

**COUNT I**

**BREACH OF FIDUCIARY DUTY**
**(As Against Defendants Berlin and Kalfus)**
**(Merger Transaction)**

50.     Plaintiff repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

51.     As officers and/or directors of Debtor, Defendants Berlin and Kalfus owed a fiduciary duty Debtor.  As such, Defendant Berlin and Kalfus owed Debtor the duties of due care, loyalty and good faith.

52.     Defendant Berlin approved the merger and the Agreements and executed the Agreements, with the exception of the April 17, 2018 amendment thereto, which Defendant Kalfus executed.  Defendant Berlin also agreed to the sale of Debtor's subsidiaries and to further indebt

Debtor in order to induce Genoptix to enter into the Agreements, thereby harming Debtor and its creditors.

53.     Defendants Berlin and Kalfus did so despite the above alleged facts.  In addition, subsequent to entering into each of the Agreements, Defendants Berlin and Kalfus caused the merger to proceed without informing Genoptix of the above alleged material facts.  Defendants Berlin and Kalfus did so either with the knowledge of the facts set forth above or did so having failed to inform themselves fully and in a deliberate manner of such facts.

54.     The Agreements contained section 2.5(a)(ii), by which Rosetta, Ltd. represented and warranted, in pertinent part, that:

> [N]one of the Company SEC Documents [since December 31, 2014] contained any untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary in order to make the statement therein, in the light of the circumstanced under which they were made, not misleading in any material respect.

55.     Defendants Berlin and Kalfus each approved and/or caused Rosetta, Ltd. to make the representations and warranties contained in section 2.5(a)(ii) while either knowing or having failed to inform themselves fully and in a deliberate manner of their falsity.  The Form 6-K, filed by Rosetta, Ltd. on or about October 10, 2017, stated that its "Reveal revenue" for the third quarter of 2017 was "approximately $860,000," when these statements were untrue or omitted to state material facts as Reveal's revenue was materially lower.  Subsequent to entering into each of the Agreements, Defendants Berlin and Kalfus caused the merger to proceed, knowing or having failed to inform themselves fully and in a deliberate manner of these facts and without informing Genoptix of them.

56.     The Agreements contained section 2.7(a), by which Rosetta, Ltd. represented and warranted, in pertinent part, that:

14

> [T]he Company and the Company subsidiaries have conducted their respective businesses in the ordinary course and in accordance with past practices.

57.     Defendants Berlin and Kalfus each approved and/or caused Rosetta, Ltd. to make the representations and warranties contained in section 2.7(a) while either knowing or having failed to inform themselves fully and in a deliberate manner of their falsity.  Rosetta, Ltd. had conducted an internal investigation into potential billing irregularities, which was outside the "ordinary course" of Rosetta, Ltd.'s business.  Subsequent to entering into each of the Agreements, Defendants Berlin and Kalfus caused the merger to proceed, knowing or having failed to inform themselves fully and in a deliberate manner of these facts and without informing Genoptix of them.

58.     The Agreements contained section 2.11, by which Rosetta, Ltd. represented and warranted, in pertinent part, that:

> The Company has no accrued, contingent or other liabilities of any nature, either matured or unmatured, in each case whether or not required to be reflected in financial statements prepared in accordance with GAAP….

59.     Defendants Berlin and Kalfus each approved and/or caused Rosetta, Ltd. to make the representations and warranties contained in section 2.11 while either knowing or having failed to inform themselves fully and in a deliberate manner of their falsity.  Rosetta, Ltd. had contingent liabilities with respect to its Medicare billing practices related to the Reveal test.  The contingent liability with respect to Rosetta, Ltd.'s Medicare billing practiced related to the Reveal test, extended beyond those reference above.  Subsequent to entering into each of the Agreements, Defendants Berlin and Kalfus caused the merger to proceed knowing or having failed to inform themselves fully and in a deliberate manner of these facts and without informing Genoptix of them.

60.     The Agreements contained section 5.2, by which Rosetta, Ltd. agreed to the condition that:

> No change, effect, event, fact, development, occurrence or circumstances shall have occurred that, individually or in the aggregate, has had, or would reasonably be expected to have, a Company Material Adverse Effect.

61.     A Company Material Adverse Effect is defined in section 1.2 of Exhibit A to the

Agreements, in pertinent part, as:

> [A]ny effect, change, event, occurrence, condition, matter, circumstance or development that, individually or in the aggregate, has or would reasonably be expected to have a material adverse effect on: (i) the assets, financial condition, or results of operations of the Company and the Company Subsidiaries, taken as a whole; or (ii) the ability of the Company to consummate the transactions contemplated by this Agreement prior to the Outside Date….

62.     Defendants Berlin and Kalfus each approved and/or caused Rosetta, Ltd. to enter

in the Agreements containing the conditions in section 5.2 while either knowing or having failed

to inform themselves fully and in a deliberate manner that Rosetta, Ltd. could not comply with

said conditions as a Company Material Adverse Effect had occurred, including but not limited to

the decline in Medicare reimbursements for Reveal tests beginning in June 2017.  Subsequent to

entering into each of the Agreements, Defendants Berlin and Kalfus caused the merger to proceed

knowing or having failed to inform themselves fully and in a deliberate manner that Rosetta, Ltd.

could not comply with said conditions and without informing Genoptix of same.

63.     On May 22, 2018, after it first began to learn the above alleged facts, Genoptix

provided notice to Rosetta, Ltd. of its discovery of Rosetta, Ltd.'s material misrepresentations

regarding revenue, potential Federal False Claims Act liability, material adverse effects and

breaches of representations and warranties.

64.     On May 23, 2018, Rosetta, Ltd. responded to Genoptix by claiming that Genoptix'

assertions were incorrect.   Rosetta, Ltd. also advised Genoptix of its June 2017 internal

investigation of its Medicare billing practices.

16

65.     On May 25, 2018, Genoptix again corresponded with Rosetta and replied to Rosetta, Ltd.'s May 23, 2018 letter.   In that letter, Genoptix provided detail as to the representations, warranties and conditions that Rosetta had breached and the facts underlying each breach.   Genoptix also made clear that Rosetta, Ltd.'s May 23, 2018 letter was the first time Rosetta, Ltd. had disclosed its June 2017 internal investigation to Genoptix.   Genoptix also alerted Rosetta, Ltd. to the fact that on May 24, 2018, it had discovered Medicare's denial of Rosetta, Ltd.'s appeal on February 7, 2018.

66.     Also on May 25, 2018, Rosetta, Ltd. responded to Genoptix letter of the same date, asserting that Genoptix' analysis was "absurd."   Rosetta, Ltd. also asserted that "[p]lease note, if Genoptix breaches its obligations under the Agreement, Rosetta plans to file for bankruptcy on May 30th in Israel and the United States."

67.     On May 29, 2018 Genoptix responded to Rosetta, Ltd.'s May 25, 2018 letter.   In its letter, Genoptix asserted that it had provided documentation to Rosetta, Ltd. demonstrating that Rosetta, Ltd. had "mischaracterized hundreds of its Reveal thyroid tests as 'Cancer Origin' tests in claims submitted to the U.S. government."

68.     Shortly thereafter, Genoptix exercised its rights under the New Agreement and Plan of Merger, as amended, and withdrew from the merger.   This was followed by Rosetta, Ltd. and Debtor filing for Chapter 7 Bankruptcy liquidation.

69.     Defendants Berlin and Kalfus breached their respective duties by, among other things, approving the merger with Genoptix, approving the Agreements and/or causing Rosetta, Ltd. to enter into the Agreements which contained representations and warranties while either knowing or having failed to inform themselves fully and in a deliberate manner of their falsity, and which contained conditions while either knowing or having failed to inform themselves fully

and in a deliberate manner that Rosetta, Ltd. could not satisfy. Subsequent to entering into each of the Agreements, Defendants Berlin and Kalfus breached their respective duties by, among other things, causing the merger to proceed knowing or having failed to inform themselves fully and in a deliberate manner of the above alleged facts and without informing Genoptix of them.

70.     Defendants Berlin and Kalfus further breached their respective duties by, among other things, failing to adequately apprise themselves of the bona fides of the Merger and terms of the Agreement and failing to require the implementation of adequate safeguards or controls which could have created an environment that would have likely prevented such breaches from occurring.

71.     Defendants Berlin's and Kalfus' acts and omissions were adverse to the best interests of Debtor and were neither intended to nor did confer any benefit on Debtor or their creditors.

72.     Defendants Berlin and Kalfus were grossly negligent and/or acted with reckless disregard or in bad faith in the discharge of their duties.

73.     Until such time as Genoptix withdrew from the merger, Defendants Berlin's and Kalfus' breaches of fiduciary duty were concealed and the injuries of such breaches were inherently unknowable.

74.     As a direct and proximate result of the breaches of fiduciary duty of the Defendants Berlin and Kalfus, the enterprise value of Debtor was substantially diminished, and the creditors were damaged thereby.

### COUNT II

### GROSS NEGLIGENCE
### (As Against Defendants Berlin and Kalfus)
### (Merger Transaction)

75.     Plaintiff repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

76.     As officers and directors of Debtor, Defendants Berlin and Kalfus each owed a duty of care to Debtor and its creditors.

77.     Defendants Berlin and Kalfus violated the duty of care they owed to Debtor and its creditors when they departed from the ordinary standard of care by approving and/or causing Rosetta, Ltd. to enter into the Agreements containing representation and warranties that were false. Defendants Berlin and Kalfus also violated the duty of care they owed to Debtor and its creditors when they departed from the ordinary standard of care by approving and/or causing Rosetta, Ltd. to enter into the Agreements containing conditions that Rosetta, Ltd. could not comply with. Defendant Berlin also violated the duty of care he owed to Debtor and its creditors when he agreed to the sale of Debtor's subsidiaries and to further indebt Debtor in order to induce Genoptix to enter into the Agreements.

78.      Defendants Berlin and Kalfus violated the duty of care they owed to Debtor and its creditors when they departed from the ordinary standard of care after the Agreements were entered into by causing the merger to proceed knowing or having failed to inform themselves fully and in a deliberate manner of the above alleged facts and without informing Genoptix of them.

79.     By approving and/or causing Rosetta, Ltd. to enter into the Agreements containing representations and warranties that were false, containing conditions that Rosetta, Ltd. could not comply with and causing the merger to proceed, Defendants Berlin and Kalfus acted outside the bounds of reason.  Alternatively, Defendants Berlin and Kalfus failed to inform themselves fully and in a deliberate manner of the facts alleged above, the falsity of the representations and warranties that they approved and/or caused Rosetta, Ltd. to make to Genoptix and the inability of Rosetta, Ltd. to comply with the conditions that Defendants approved and/or caused Rosetta, Ltd. to agree to in the Agreements.

80.     Each of the facts alleged above were material and reasonably available to Defendants Berlin and Kalfus in light of the fact that they concerned the revenue of Rosetta, Ltd.'s diagnostic test that, according to its Form 6-K filed on October 10, 2017, was believed to "provide[] the best path to profitability."  Moreover, the facts alleged above were all reasonably available to and knowable by Defendants Berlin and Kalfus as they relate to the revenue received and to be received from Rosetta, Ltd.'s "path to profitability" diagnostic test, an internal investigation into the billing practices that drove the revenue of that test, and the contingent liability that stemmed from the revenue previously received from that test.  Given the material nature of these facts and the ability of Defendants Berlin and Kalfus to learn these facts, if they did not know them, they were recklessly uninformed.

81.     As Genoptix stated in their May 25, 2018 letter to Rosetta, Ltd. "[i]n light of the new information that we are continuing to discover, and the new information that were are continuing to discovery, including that a previously undisclosed investigation was launched into Rosetta's billing practices last summer, we will take this opportunity to set forth Genoptix's principle concerns as they presently exist: [Breaches of Representation and Warranties, Company Material Adverse Effect, Knowingly False Representations and Omissions and Damages Incurred by Rosetta's Misconduct]."  When each of these facts finally became apparent to Genoptix, it decided to back out of the merger.  But for Defendants Berlin's and Kalfus' gross negligence, Genoptix would not have backed out of the merger when it did.  After the merger failed, Rosetta, Ltd. and Debtor were forced to file for Chapter 7 Bankruptcy liquidation.

82.     Until such time as Genoptix withdrew from the merger, Defendants Berlin's and Kalfus' gross negligence was concealed and the injuries were inherently unknowable.

83.     As a result of Defendants Berlin's and Kalfus' gross negligence, Debtor and its creditors have been damaged.

## COUNT III

### FRAUD
### (As Against Defendants Berlin and Kalfus)
### (Merger Transaction)

84.     Plaintiff repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

85.     The Defendants Berlin and Kalfus approved the Agreements and Defendant Berlin executed the Agreements as CEO and President of Rosetta, Ltd. and Defendant Kalfus executed the April 17, 2018 amendment as CFO of Rosetta, Ltd.  Defendant Berlin also agreed to the sale of Debtor's subsidiaries and to further indebt Debtor in order to induce Genoptix to enter into the Agreements. By Defendants Berlin and Kalfus approving the Agreements and executing their respective Agreements, Defendants Berlin and Kalfus caused the statements (i.e., the representations, warranties and conditions) contained therein to be made.  The representations and warranties alleged above were false and the conditions alleged above could not be complied with. Despite the representations and warranties that Defendants Berlin and Kalfus caused to be made in section 2.5(a)(ii), the Form 6-K, filed with the SEC by Rosetta, Ltd. misstated "Reveal revenue" for the third quarter of 2017.  Despite the representations and warranties that Defendants Berlin and Kalfus caused to be made in section 2.7(a), Rosetta, Ltd. had conducted an internal investigation into potential billing irregularities, which was outside the "ordinary course" of Rosetta, Ltd.'s business.  Despite the representations and warranties that Defendants Berlin and Kalfus caused to be made in section 2.11, Rosetta, Ltd. had contingent liabilities with respect to its Medicare billing practices related to the Reveal test.  Despite the conditions that Defendants Berlin and Kalfus caused to be made in section 5.2, Rosetta, Ltd. could not comply with them as

21

a Company Material Adverse Effect had occurred, including but not limited to the decline in Medicare reimbursements for Reveal tests beginning in June 2017.

86.    Defendants Berlin and Kalfus omitted these facts from Rosetta, Ltd.'s shareholders when they recommend that the shareholders approve the Agreements and the merger.  Defendants Berlin and Kalfus also omitted these facts from Genoptix when it entered into the Agreements and omitted the underlying fact from Genoptix after the Agreements were entered into.

87.    Each of the facts that Defendants Berlin and Kalfus misrepresented and/or omitted were material in light of the fact that they concerned the revenue of Rosetta, Ltd.'s diagnostic test that, according to its Form 6-K filed on October 16, 2017, was believed to "provide[] the best path to profitability."  The misrepresented and/or omitted facts relate to the revenue received and to be received from Rosetta, Ltd.'s "path to profitability" diagnostic test, an internal investigation into the billing practices that drove the revenue of that test, and the contingent liability that stemmed from the revenue previously received from that test.

88.    Defendants Berlin and Kalfus knowingly made the alleged misrepresentations of material fact with the intent to have the Rosetta, Ltd. shareholders approve the merger and to have Genoptix agree to the merger and enter into the Agreements.

89.    In reliance of Defendants Berlin's and Kalfus' misrepresentation and omissions of material facts, Rosetta, Ltd.'s shareholders approved the merger, Genoptix agreed to the merger and entered into the Agreements and proceeded with the merger process after the Agreements were signed.

90.    Until such time as Genoptix withdrew from the merger, Defendants Berlin's and Kalfus' fraud was concealed and the injuries were inherently unknowable.

91.    As a result of the foregoing, which was revealed when Genoptix backed out of the merger in late May 2018, Debtor and Debtor's creditors have suffered damages.

**COUNT IV**
**FRAUD**
**(As Against All Defendants)**
**(Sabby Securities Purchase Agreement Transactions)**

92.    Plaintiff repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

93.    Each Securities Purchase Agreement (collectively the "Securities Purchase Agreements") contained section 3.1(i), by which Rosetta, Ltd. represented and warranted, in pertinent part, that:

> Material Changes; Undisclosed Events, Liabilities or Developments. Since the date of the latest audited financial statements included within the SEC Reports…(i) there has been no event, occurrence or development that has had or that could reasonably be expected to result in a Material Adverse Effect, (ii) the Company has not incurred any liabilities (contingent or otherwise).…[N]o event, liability, fact, circumstance, occurrence or development has occurred or exists or is reasonably expected to occur or exist with respect to the Company or its Subsidiaries or their respective businesses, prospects, properties, operations, assets or financial condition that would be required to be disclosed by the Company under applicable securities laws at the time this representation is made or deemed made that has not been publicly disclosed….

94.    In turn, a Material Adverse Effect as defined by section 3.1(b) includes "a material adverse effect on the results of operations, assets, business, prospects or condition (financial or otherwise) of the Company and the Subsidiaries, taken as a whole."

95.    The Board Defendants approved the terms of the transactions with Sabby. Defendant Berlin executed the Securities Purchase Agreements as CEO of Rosetta, Ltd.  By the Board Defendants approving the terms of the transactions and Defendant Berlin executing the

Securities Purchase Agreements, Defendants caused the statements (i.e., the representation and warranties) contained therein to be made.  The representations and warranties alleged above were false.  Despite the representations and warranties that Defendants caused to be made in section 3.1(i), a Material Adverse Effect had occurred, including but not limited to the decline in Medicare reimbursements for Reveal tests beginning in June 2017, the misstatement of "Reveal revenue" for the third quarter of 2017 in the Form 6-K, filed by Rosetta, Ltd. with the SEC, Rosetta, Ltd.'s internal investigation into potential billing irregularities, and Rosetta, Ltd.'s contingent liabilities with respect to its Medicare billing practices related to the Reveal test.

96.     Defendants misrepresented and/or omitted and failed to disclose these facts to Sabby when they induced Sabby to enter into the Securities Purchase Agreements.  Defendants also misrepresented and/or omitted and failed to disclose these facts to Sabby after the Securities Purchase Agreements were entered into.

97.     Each of the facts that Defendants misrepresented and/or omitted were material in light of the fact that they concerned the revenue of Rosetta, Ltd.'s diagnostic test that, according to its Form 6-K filed on October 16, 2017, was believed to "provide[] the best path to profitability." The misrepresented and/or omitted facts relate to the revenue received and to be received from Rosetta, Ltd.'s "path to profitability" diagnostic test, an internal investigation into the billing practices that drove the revenue of that test, and the contingent liability that stemmed from the revenue previously received from that test.

98.     Defendants knowingly made the alleged misrepresentations and omissions of material fact with the intent to induce Sabby to enter into the Securities Purchase Agreements and invest $7,871,844 in the securities purchased pursuant to the Securities Purchase Agreements.

99.     In reliance of Defendants' misrepresentations and omissions of material facts, Sabby entered into the Securities Purchase Agreements and invested $7,871,844 in the securities purchased pursuant to the Securities Purchase Agreements.

100.    Until such time as Genoptix withdrew from the merger, Defendants' fraud was concealed and the injuries were inherently unknowable.

101.    As a result of the foregoing, which was revealed when Genoptix backed out of the merger in late May 2018, Sabby has suffered damages.

## COUNT V
## FRAUD
### (As Against Defendant Berlin)
### (Sabby 2018 Purchases)

102.    Plaintiff repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

103.    Following its failure to gain approval of the proposed merger, Rosetta, Ltd. through Defendant Berlin, solicited Sabby to purchase additional shares of Rosetta, Ltd. in the open market. The purpose of this solicitation was to ensure sufficient votes in favor of the merger so as to secure shareholder approval of the merger.

104.    Defendant Berlin misrepresented and/or omitted and failed to disclose material facts to Sabby when he solicited Sabby to purchase additional shares of Rosetta, Ltd. in February and March 2018 (for the purpose of approving a doomed merger with Genoptix).  Even though Medicare had denied Rosetta, Ltd.'s appeal regarding the rejection of its Reveal test claim only weeks earlier, Defendant Berlin never disclosed that fact to Sabby when he solicited Sabby to purchase additional shares of Rosetta, Ltd. or at any time thereafter.  Defendant Berlin misrepresented and/or omitted and failed to disclose to Sabby additional material facts, included

but were not limited to, the decline in Medicare reimbursements for Reveal tests beginning in June 2017, the misstatement of "Reveal revenue" for the third quarter of 2017 in the Form 6-K, filed by Rosetta, Ltd. with the SEC, Rosetta, Ltd.'s internal investigation into potential billing irregularities, and Rosetta, Ltd.'s contingent liabilities with respect to its Medicare billing practices related to the Reveal test.  Defendant Berlin also misrepresented and/or omitted and failed to disclose to Sabby that the representations, warranties and conditions contained in the Agreements, which he had approved and caused to executed, were false and could not be met.  Defendant Berlin continued to fail to disclose these facts to Sabby after Sabby purchased additional shares of Rosetta, Ltd. in February and March 2018.

105.    Each of the facts that Defendant Berlin misrepresented and/or omitted were material in light of the fact that they concerned the revenue of Rosetta, Ltd.'s diagnostic test that, according to its Form 6-K filed on October 16, 2017, was believed to "provide[] the best path to profitability."  The misrepresented and/or omitted facts relate to the revenue received and to be received from Rosetta, Ltd.'s "path to profitability" diagnostic test, an internal investigation into the billing practices that drove the revenue of that test, and the contingent liability that stemmed from the revenue previously received from that test.

106.    Defendant Berlin knowingly made the alleged misrepresentations and omissions of material fact with the intent to induce Sabby to purchase additional shares of Rosetta, Ltd. in February and March 2018.

107.    In reliance of Defendant Berlin's misrepresentation and omissions of material facts, Sabby purchased additional shares of Rosetta, Ltd. in February and March 2018 and invested $367,735 in those shares.

108.    Until such time as Genoptix withdrew from the merger, Defendant Berlin's fraud was concealed and the injuries were inherently unknowable.

109.    As a result of the foregoing, which was revealed when Genoptix backed out of the merger in late May 2018, Sabby has suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, the Trustee demands judgment against the Defendants, jointly and severally, for compensatory damages in an amount to be determined at trial, out-of-pocket fees, costs and expenses attributable to and incurred or paid by Debtor and the Trustee, and all attributable attorneys' fees, costs and expenses, plus pre-judgment interest, court costs and for such other relief this Court deems appropriate. The Trustee reserves the right to seek punitive damages at the appropriate time.

Dated:  May 28, 2021                                    **Lax & Neville, LLP**

                                                         */s/ Barry R. Lax*
                                                         Barry R. Lax (#BL1302)
                                                         350 Fifth Ave.
                                                         Suite 4640
                                                         New York, NY 10118
                                                         Telephone: 212-696-1999
                                                         Facsimile: 212-566-4531
                                                         Email: blax@laxneville.com

                                                         *Special Litigation Counsel to*
                                                         *Don A. Beskrone, Chapter 7*
                                                         *Trustee of the Debtor*